UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IVA ROBBINS**,<br><br>    Plaintiff,<br><br>  v.<br><br>**UNITED STATES POSTAL SERVICE, et al.**,<br><br>    Defendants. | Casea No. 24-cv-1156 (CRC) |

## MEMORANDUM OPINION

Pro se plaintiff Iva Robbins filed this lawsuit against the United States Postal Service ("USPS"), former Postmaster General Louis Dejoy, and Postal Service Virginia District Manager Gerald Roane after USPS purportedly withdrew a conditional offer it had made Robbins for a job at one of its Virginia facilities. Robbins claims the agency violated the Age Discrimination in Employment Act ("ADEA") of 1967 based on this alleged withdrawal, as well as technical difficulties she experienced while applying for the job. The government moves to dismiss her complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Because Robbins has not pled any plausible claim, the Court will grant the motion.

**I. Background**

  A. Factual Background

The Court draws the following background from Ms. Robbins's complaint and documents she attached to it. The Court accepts the complaint's allegations as true for purposes of the motion.

In October 2023, Robbins, who is over forty years old, see ECF 1 ("Compl.") ¶ 3, applied for a job as a Mail Handler Assistant at a USPS facility in Sandston, Virginia, see ECF 1-1 at 1

(page numbers designated by CM/ECF) (October 27, 2023, email from USPS acknowledging application for Mail Handler Assistant position at Sandston location).  According to Robbins, the first step of the application process was to attend a session at a USPS facility in Richmond, Virginia, where she was provided with a USPS computer so that she could submit her application on "USPS's network."  Compl. ¶ 16; see also id. ¶¶ 12, 15, 17.  Robbins claims she experienced various technical difficulties while attempting to prepare and submit her application, including that she had to use a USPS provided username and password rather than her own log-in credentials, and that her work experience was repeatedly deleted before eventually being saved. See id. ¶¶ 18–24.  She alleges that "young men" were able to create their own log-in credentials and did not have to input their work experience more than once.  Id. ¶ 24.  As a result, she asserts that the "application session . . . was not age neutral."  Id. ¶ 14.

Despite these technical issues, Robbins managed to submit an application and proceed to the next step of the process, a virtual assessment.  See ECF 1-1 at 6 (October 27, 2023, email from USPS to Robbins directing her to complete assessment).  She alleges that she was "encouraged" to perform the assessment at home, while "young men" did it at the application site.  Compl. ¶ 24-a.

Robbins apparently continued to struggle logging into her candidate profile.  See, e.g., id. ¶¶ 26–27.  On November 1, 2023, she emailed a USPS representative, Roxana Toman, to express concerns that USPS was discriminating against her based on her age by putting her through an application "process" that "screen[ed] out [her] application as not a candidate for [an] immediate position."  ECF 1-1 at 4 (October 31, 2023, and November 1, 2023, emails from Robbins to Toman); see also id. at 3 (November 2, 2023, email from Robbins to Toman expressing similar concerns).

Two days later, however, USPS extended Robbins a conditional offer for the Mail Handler Assistant position at the Sandston facility. Id. at 2 (November 3, 2023, USPS offer letter to Robbins). The offer specified that "[t]his job offer and any subsequent employment are conditioned on your meeting medical, eligibility, suitability, and background-investigation requirements." Id. It advised Robbins, "Please do not resign from your current job at this time," and explained that Robbins's "effective date [would] be determined once [she] complete[d] the necessary information and post-offer checks described above." Id.

Robbins promptly advised USPS that she had completed her background-check questionnaire and requested an appointment for fingerprinting. Id. at 10 (November 6, 2023, email from Robbins to USPS). A month later, Robbins informed Toman that her background check had been completed and inquired about start dates at the Sandston location. Id. at 13 (December 6, 2023, email from Robbins to Toman).

For some reason, however, Robbins apparently never assumed the job. She claims USPS withdrew the offer. See, e.g., Compl. ¶ 8. As evidence, she points to an email from USPS employee Carlee Cash, see id. ¶¶ 39, 50, which appears to be a follow-up response to either a phone call or email from Robbins in the early December time frame, see ECF 1-1 at 11. Cash wrote:

> The job offer you received was a conditional job offer from our Greensboro Shared Services Center[1]. Once you pass the background check you will receive further

---

[1] "At this motion-to-dismiss stage, the court may take judicial notice of publicly available information on official government websites." Dickens v. District of Columbia, No. 23-cv-2900 (CRC), 2025 WL 885124, at *8 n.7 (D.D.C. Mar. 21, 2025) (quoting Lee v. Blinken, No. 23-cv-1783 (DLF), 2024 WL 639635, at *1 n.1 (D.D.C. Feb. 15, 2024)). Accordingly, the Court takes judicial notice that the Greensboro Shared Services Center is USPS's national processing center for personnel activities. What's the HRSSC?, (Jan. 27, 2015), https://news.usps.com/2015/01/27/whats-the-hrssc/. The Court assumes that the job offer for the Sandston facility was simply communicated to Robbins by the Greensboro Shared Services Center, not that she received an offer to work at the Greensboro Center itself.

>consideration. At this time, we have reached our hiring cap for Mail Handlers at the Richmond [Regional Processing and Distribution Center]. If vacancies arise then we will continue to pull from those on the hiring list. In the meantime, please feel free to apply for other opportunities.

ECF 1-1 at 11. Robbins replied to Cash on December 8, insisting that the job offer she received was conditional on her background check, not a "hiring cap," and that USPS was discriminating against her based on her age. Id. at 12 (December 8, 2023, email from Robbins to Cash). Confusingly, however, Cash's mention of the "hiring cap" appears to relate to positions at the Richmond Regional Processing and Distribution Center ("RPDC"), not the Sandston facility where Robbins had an offer. The materials before the Court do not indicate that Robbins applied for a position at the Richmond RPDC, although the context of the email exchange with Ms. Cash suggests that Robbins may have inquired about positions there.

Further muddying the waters, Robbins appears to have reapplied for the Mail Handler Assistant position at the Sandston facility in late December. See id. at 16 (December 29, 2023, email from USPS to Robbins acknowledging application for Mail Handler Assistant position at Sandston location).

B. Procedural Background

Robbins claims to have sent the Equal Employment Opportunity Commission ("EEOC") notice of her intent to sue under the ADEA on December 21, 2023. ECF 28 ("Opp'n") ¶ 6. On April 19, 2024, she filed this lawsuit against USPS, then Postmaster General Dejoy, and Postal Service Virginia District Manager Roane, alleging violations of the ADEA and seeking liquidated damages, lost backpay, front pay, financial compensation for lost benefits, and fees. See Compl. ¶ 52. Robbins was granted leave to proceed in forma pauperis, and under Local Rule 40.5, this case was deemed related to an earlier pro se case she filed that was assigned to this Court. See ECF 3; LCvR 40.5(a)(3) ("Notwithstanding the foregoing, a case filed by a *pro se*

litigant with a prior case pending shall be deemed related and assigned to the judge having the earliest case."). Robbins appealed the designation of the case as related but later withdrew her appeal. See ECF 6, 10.

While her appeal was pending, Robbins filed a motion for default judgment. See ECF 9. After the D.C. Circuit issued its mandate as to her appeal, she filed a motion for entry of default, which she subsequently withdrew and renewed. See ECF 12, 13, 14. On September 25, 2024, the government appeared and moved for an extension of time to respond to Robbins's complaint, see ECF 17, which the Court granted, see September 26, 2024, Minute Order. In light of the government's appearance, the Court denied Robbins's various default-related motions. See October 1, 2024, Minute Order.

Robbins then filed another motion for default judgment. See ECF 24. The government responded with a motion to dismiss Robbins's complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), see ECF 26 ("Mot."), which she opposed. After missing its deadline, the government moved for leave to file an attached reply, see ECF 29, which the Court will now grant.

**II. Legal Standards**

   A. Motion to Dismiss

A court deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat. Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss for lack of jurisdiction under 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

To survive a motion to dismiss for failure to state a claim under 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if the pleaded facts allow the court to reasonably infer that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. While a court must take the complaint's factual allegations as true, it need not accept legal conclusions, and mere "labels" or "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." Id. (quoting Twombly, 550 U.S. at 555). Nor must a court "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice." Kaempe v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004).

B. Pro Se Litigants

"[T]he pleadings of pro se parties are to be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'" Tyson v. Brennan, 277 F. Supp. 3d 28, 35 (D.D.C. 2017) (second alteration in original) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)). A pro se litigant's complaint is assessed "in light of all filings, including filings responsive to a motion to dismiss," such as the opposition to the motion and any attached documents. Ho v. Garland, 106 F.4th 47, 50 (D.C. Cir. 2024) (quotation marks omitted) (quoting Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam)).

### III.  Analysis

    A.  <u>Failure to Exhaust</u>

The government first moves to dismiss Robbins's complaint for failure to exhaust administrative remedies.  Before bringing an ADEA claim in federal court, an individual must either file a complaint with the EEOC or give the EEOC 30 days' notice of her intent to file suit.  29 U.S.C. § 633a(d).  The government claims that Robbins has not "alleged nor demonstrated that she gave the EEOC the required notice."  Mot. at 4.

"Courts frequently treat failure to exhaust as an affirmative defense" that is usually inappropriate for resolution under Rule 12(b)(6).  <u>Thompson v. DEA</u>, 492 F.3d 428, 438 (D.C. Cir. 2007).  But the defense may "be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face."  <u>Id.</u>  On the other hand, if deciding whether the plaintiff met "the statutory prerequisites to suit" necessitates "consider[ation] [of] submissions outside the complaint," the motion should be treated as one for summary judgment.  <u>Rann v. Chao</u>, 346 F.3d 192, 194–95 (D.C. Cir. 2003).

In her opposition, Robbins contends that she sent the EEOC notice of her intent to sue under the ADEA on December 21, 2023.  Opp'n ¶ 6.  The government responds with a declaration from the USPS employee responsible for receiving EEO complaints that USPS "did not receive any notification from the Equal Employment Opportunity Commission acknowledging their receipt of either a Letter or Notice of Intent to File Lawsuit from Iva Robbins."  See ECF 29-2 ¶¶ 3, 6.  Given this factual dispute created in part by "submissions outside the complaint," it is inappropriate to resolve the government's motion based on the failure to exhaust.  <u>See</u> <u>Rann</u>, 346 F.3d at 194–95.  Instead, the Court will proceed to consider whether Robbins has stated a plausible claim for relief under Rule 12(b)(6).

B.  ADEA

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  Robbins alleges that USPS violated the ADEA when it withdrew her employment offer.  See, e.g., Compl. ¶ 8.

"As with Title VII, in the absence of direct evidence of discrimination, disparate-treatment claims under the ADEA are analyzed under the McDonnell Douglas burden-shifting framework."  Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1155 (D.C. Cir. 2004).  Therefore,

> [t]o establish a prima facie case under the ADEA, for a claim involving a failure to hire, the plaintiff must demonstrate that (1) she is a member of the protected class (i.e., over 40 years of age); (2) she was qualified for the position for which she applied; (3) she was not hired; and (4) she was disadvantaged in favor of a younger person.

Id. (collecting cases).  "[T]he importance of McDonnell Douglas lies not in its specification of the discrete elements of proof there required, but in its recognition of the general principle" that the "plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion."  Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 (1977).

Robbins has not carried this burden.  First, as recounted above, Robbins's filings raise confusion over whether USPS actually "fail[ed] or refuse[d] to hire" her.  29 U.S.C. § 623(a)(1).  To support her allegation that USPS withdrew her job offer, Robbins points to an email she received from Carlee Cash, a USPS employee.  See Compl. ¶¶ 39, 50.  But the natural reading of that email is not that USPS withdrew the offer but rather that USPS was continuing to process Robbins's application while her background check was pending.  Specifically, Ms. Cash wrote

8

that Robbins had "received . . . a conditional job offer" and would "receive further consideration" once she "pass[ed] the background check." ECF 1-1 at 11.  Cash went on to say that USPS had "reached [its] hiring cap for Mail Handlers at the Richmond RPDC," but if a vacancy arose, USPS would "continue to pull from those on the hiring list." Id.  Robbins responded by suggesting that USPS improperly applied the "hiring cap" to withdraw her offer. See ECF 1-1 at 12.  But Cash appears to have mentioned the cap in reference to the "Richmond RPDC," and Robbins's filings indicate she applied to the Sandston location, not the Richmond RPDC.  See ECF 1-1 at 1–2, 13.

Given, however, that Robbins repeatedly alleges that USPS withdrew her offer, see, e.g., Compl. ¶¶ 8, 10, 12, 37–38, that the Court must construe Robbins's filings in her favor, and that Cash's email does not necessarily "contradict" this allegation, see Kaempe, 367 F.3d at 963, the Court will take the allegation as true.  Still, even accepting that USPS withdrew her offer, Robbins has not alleged that "she was disadvantaged in favor of a younger person" or otherwise pled facts plausible of supporting an inference that the agency discriminated against her because of her age.  See Teneyck, 365 F.3d at 1155.

Robbins does not, for example, allege that USPS withdrew her offer in favor of a younger applicant—or even that someone younger than her received a conditional offer that was not withdrawn.  Instead, she describes the technical difficulties she experienced when *applying* for the role.  See, e.g., Compl. ¶ 13 (claiming USPS "employed tactics in attempts to disable the Plaintiff as age 40 and older over from being an applicant").  But Robbins has not given the Court any reason to think those technical issues were part of a plan orchestrated by USPS to keep Robbins from applying to the position because of her age, rather than routine issues logging into her account.  The fact that "young men" allegedly did not experience these issues is not, without

more, suggestive of discrimination, particularly given that Robbins ultimately applied for the job and received an offer. Accordingly, Robbins has failed to plead a plausible claim for age discrimination under the ADEA.

### C. Other Claims

To the extent Robbins attempts to assert independent (i.e., non-ADEA) claims based on her allegations the Postal Service "took unlawful custod[y]" of her candidate profile and gave her "inoperative" usernames and passwords, id. ¶¶ 30, 38, she has not offered even "[t]hreadbare recitals of the elements of a cause of action," Iqbal, 556 U.S. at 678. Accordingly, the Court will dismiss her complaint in full.[2]

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order shall accompany this memorandum opinion.

                                                  CHRISTOPHER R. COOPER
                                                  United States District Judge

Date: April 16, 2025

---

[2] The government urges the Court to dismiss these other claims for lack of subject-matter jurisdiction because they are "so attenuated and unsubstantial as to be absolutely devoid of merit." See Mot. at 6 (quoting Hagans v. Lavine, 415 U.S. 528, 536–37 (1974)). The Court need not determine whether these allegations are so fantastical as to meet this standard because, regardless, they cannot support a plausible claim for relief.